UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Phillips 66 Company,<br>    Plaintiff<br><br>v.<br><br>Marine Petrobulk Ltd.,<br>    Defendant | Civil Action No. 1:22-cv-1121<br><br>**COMPLAINT** |

Plaintiff Phillips 66 Company ("Phillips 66") files this complaint against Defendant Marine Petrobulk Ltd. ("MPB," and with Phillips 66, "the Parties"), and states as follows:

## NATURE OF THE ACTION

1.  MPB purchased marine fuel from Phillips 66 at an agreed-upon contract price, confirmed in writing. After the fuel was delivered to MPB, an error in Phillips 66's invoicing software billed MPB an amount less than the contract price. The erroneous invoices sent over a period of eight months in no way modify the agreed-upon contractual terms. MPB owes Phillips 66 approximately $4 million plus interest for the difference between the erroneous invoices and the agreed contract prices for the fuel purchased and delivered. The audit rights in the Parties' agreement, as well as industry practice and the Parties' course of dealing, allow Phillips 66 to recover the amount owed by MPB. MPB is in breach of its agreements because it refuses to pay Phillips 66 the balance of the agreed-upon contract price.

## PARTIES

2.  **MPB** is a Canadian corporation with its principal place of business in Vancouver, B.C. MPB operates barges that provide fuel to cruise ships, bulker carriers, and tankers in ports. MPB is a sophisticated purchaser of marine fuel products and a subsidiary of a large Canadian

marine conglomerate, Seaspan ULC. MPB consented to service of process by certified mail pursuant to its contract with Phillips 66.

3. **Phillips 66** is a Delaware corporation with its principal place of business in Houston, Texas. Phillips 66 is a diversified energy company with unique businesses in refining, midstream, chemicals, marketing, and specialties. Phillips 66's refinery located in Ferndale, Washington is situated near Vancouver and provided the fuel purchased by MPB.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Phillips 66 and MPB, and the amount in controversy exceeds $75,000. Diversity of citizenship exists because Phillips 66 is a citizen of Delaware and Houston, and MPB is a citizen of Canada.

5. Personal jurisdiction over MPB is proper. The Parties agreed, in the event of a dispute, to "submit to the non-exclusive jurisdiction of the courts of the State of New York and the federal courts situated in New York City, Borough of Manhattan."

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) because MPB agreed to submit to the personal jurisdiction of this Court.

7. New York law controls this case according to the Contract.

## FACTS

**A.   The Parties' Marine Fuel Purchasing Contract**

8. MPB agreed to Phillips 66's General Terms and Conditions ("GTCs"), attached as Exhibit A, and the Non-Crude Oil Products Marine Provisions, attached as Exhibit B, to govern its transactions for the purchase of marine fuel.

9. The GTCs define a "Confirmation" as any writing evidencing the Transaction. Section 1(g). A Confirmation was issued in writing for each of the thirty- seven purchases at issue

2

from August 12, 2020 to April 8, 2021.

10. The GTCs define a "Transaction" as the agreement for the purchase or sale of a product "which may be evidenced by a Confirmation." Section 1(t), Exhibit A. The GTCs and a Transaction form a single integrated agreement between the Parties. Section 10.5, Exhibit A.

11. The Confirmation shall prevail in the event of any conflict on commercial terms among the documents that make up the parties' agreement. Section 21.5, Exhibit A.

12. An invoice, issued after the terms of a fuel purchase have been set and the fuel has been delivered, cannot modify the pricing set out in the Confirmation, which controls the commercial terms of the transaction. Here, the Confirmations involved in the Transactions from August 12, 2020 to April 8, 2021 all contain language addressing the finality of the pricing contained therein and provide that "advice must be given in writing of any discrepancies in the commercial terms, such as price, quantity and delivery point …" MPB never advised of any discrepancies in the commercial terms of the agreements.

13. Section 17 of the GTCs provides an audit right under which Phillips 66 has up to two years to correct any errors in a Transaction. Either party may conduct a review during the audit period, defined as a period in which books and records can be inspected and claims can be made related to performance of a Transaction. Section 17, Exhibit A. Statements, invoices, and charges are not final until two years from the date of the last delivery under a Transaction if no claim is made during this period. The audit period is designed to address invoicing errors such as occurred in this case.

14. MPB owes interest on the disputed amounts "from and including the originally scheduled due date to but excluding the date paid" at the annual rate (based on a 360-day year) equal to two percentage points above the prime rate. Here, interest at the rate of 5.25% began

accruing not later than May 4, 2021. Section 5.5, Exhibit A.

B.    **The Contract Price and its Calculation**

15.    In 2020, the International Maritime Organization began requiring maritime vessels to switch from 3.5% sulfur heavy fuel oil ("IMO 2020") to no more than .5% sulfur fuel (known as very low sulfur fuel oil, or "VLSFO"). MPB agreed to pricing based on the Platts Singapore Gasoil 10ppm index. This index price is an industry index that can be converted to determine the price for VLSFO, which is a much heavier fuel than the Singapore index. The Platts index price is listed in dollars per barrel, and not dollars per metric ton. Platts specifies that to convert the index price from barrels to metric tons, a conversion factor of 7.45 bbls/metric ton should be used. The 7.45 conversion factor is the weight conversion for the American Petroleum Institute ("API") gravity of 36 at 60°F. In other words, 1 metric ton of 36 API gasoil is 7.45 barrels. The Confirmations between Phillips 66 and MPB are clear that the Parties agreed to this conversion factor for the purpose of calculating price:

> Pricing to be determined by first multiplying Platts Sing Gasoil 10ppm by 7.45/MT, then apply MT discount to determine final MT price.

16.    The Confirmations specify that the sales price will be calculated using the Platts Singapore Gasoil 10ppm index price, which is in barrels, less an agreed discount, which is listed in metric tons. Accordingly, to calculate the price, the Parties need to first convert the Platts index from barrels to metric tons using the 7.45 conversion factor, and then subtract the discount in metric tons. For example, for a $20/metric ton discount, the pricing per metric ton in the Confirmation is as follows:

(Platts Price x 7.45 bbls/MT) - $20/MT Discount = Price/METRIC TON

The resulting price is for each metric ton delivered.

## C. The Contract Quantity and its Determination

17. Each Confirmation provides a clear indication of the type and the quantity of fuel to be delivered in metric tons. Fuel has different density measurements; thus, 1 metric ton of a lower API (or heavier fuel—such as VLSFO), will consist of less volume than 1 ton of lighter fuel, such as gasoil, which is the benchmark for Platts Singapore Gasoil 10ppm.

18. Phillips 66 was not selling 36 API gasoil to MPB; that was only the agreed pricing mechanism using the Platts index. Therefore, 7.45 is not the correct factor to convert the actual volume of product delivered to MPB from metric tons to barrels. Instead, to determine the quantity of barrels delivered and the corresponding price per barrel, the only proper way is to use the *actual* weight of the fuel delivered.

## D. The Invoicing Error

19. If Phillips 66 had invoiced MPB in metric tons, no invoicing error would have occurred. However, MPB asked Phillips 66 to send invoices in barrels, not metric tons. To accommodate MPB's request, Phillips 66 was required to convert the price quoted in metric tons in the Confirmation back to barrels to be shown on the invoice. This was a purely administrative accommodation, which did not alter the actual volume or the resulting price of VLSFO delivered to MPB.

20. Because the parties agreed to a contract price based on metric tons, the price of the fuel in dollars per barrel could not be determined with accuracy until MPB and Phillips 66 determined the *actual* density (weight) of the delivered product. The weight of fuel is determined by its API gravity number. In other words, the lower the API number, the heavier the fuel. Here, the Confirmations specified a pricing index for a product at a weight of API gravity of 36, but as determined by third party analysis conducted at the time of each delivery, the actual weight of the

fuel Phillips 66 delivered to MPB varied from API 12 to API 20, which corresponds to a conversion factor ranging from 6.38 bbls/metric ton to 6.73 bbls/metric ton. These are the correct conversion factors that should be used to convert the agreed-upon metric ton price into barrels. As an example, for API 12 fuel with a $20/MT discount, this would be calculated as:

$$\frac{(\text{Platts Price} \times 7.45 \text{ bbls/MT}) - \$20/\text{MT Discount}}{6.38 \text{ bbls/MT}}$$

All of these pricing and measurement concepts are well-known and widely accepted in the fuel marketing industry.

21.     Due to a software limitation, Phillips 66's billing system used the default 7.45 conversion factor specified for determining price instead of a conversion factor that matched the actual density and weight of the product delivered, which was 6.38 to 6.73. Consequently, MPB was not invoiced at the contract price for all of the fuel it received.

E.     **MPB's Knowledge and Awareness as an Experienced Purchaser of Petroleum Products and in its Course of Dealing with Phillips 66**

22.     MPB purchased VLSFO fuel to load its barges at Phillips 66's Ferndale, Washington refinery on average once a week. Each time, MPB was aware of the price per barrel of the fuel delivered within about a day of loading fuel due to measurements for the actual density (weight). Once the third-party inspection to confirm quality and quantity was complete, MPB had all the inputs necessary to verify the total cost of each purchase under the agreed-upon contract price.

23.     This dispute involves thirty-seven of MPB's purchases for the eight months from August 12, 2020 to April 8, 2021. For each Transaction, Phillips 66 quoted the price to MPB by providing a formula via email to MPB's Tony Brewster, showing the formula for the price. For example, on August 12, 2020, Phillips 66 quoted the price as "Platts Sing Gasoil 10ppm minus

$40/MT FOB at Ferndale, with a 7.45 conv[ersion] factor (i.e. (Sing Gasoil 10ppm * 7.45) - $45/MT = price)."

24. The discount, quoted in dollars per metric ton, is the only input that changed in the formula for each transaction and reflects the pricing for market conditions at the time of a Transaction. Notably, MPB's Mr. Brewster always confirmed the formula, without questioning or negotiating the price further. MPB confirmed the transactions by saying:

- "If this is your price this is the price" (August 12, 2020 Email)
- "Ok I have to try to make it work. As mentioned you are my supplier." (September 29, 2020 Email)
- "I will make it work" (October 26, 2020 Email, November 18, 2020 Email)
- "We will have to make it work if that is what you are facing" (January 26, 2021 Email)
- "If that is the best you can do I will take it" (February 5, 2021 Email)

MPB's emails confirm that MPB both understood the pricing mechanism, and that MPB would accept the price Phillips 66 quoted.

25. On September 10, 2020 Mr. Brewster said he was seeing "decent demand," and he wanted to obtain more loads of Phillips 66's product if he could "close some volume" and that he would "offer overnight and confirm with [Phillips 66] tomorrow." The "offer" referred to in this email implies that MPB locked in its pricing with its customers before taking delivery of fuel at the Ferndale refinery or receiving an actual invoice from Phillips 66.

F. **Phillips 66 Discovers a Billing Error and Promptly Informs MPB**

26. Phillips 66 invoiced MPB for 8 months using an incorrect metric ton to barrels conversion that did not reflect the actual volume that Phillips delivered to MPB. The invoices used the default weight of 36 API fuel and the corresponding 7.45 conversion factor, instead of the correct, much heavier, actual weight of the fuel delivered which was approximately 6.28 to 6.73 bbls/metric ton. This billing error understated the price per barrel from what the parties agreed to

7

in the Confirmations. The amount listed on the invoices was incorrect because it did not take into account the actual weight of the fuel delivered or reflect the contract pricing.

27. As soon as Phillips 66 discovered the billing discrepancy, and relying on the audit right under the GTCs, Phillips 66's Becky Shaw called MPB's Mr. Brewster and informed him that MPB had been undercharged and that MPB would receive corrected invoices reflecting the agreed-upon contract price for each delivery. Phillips 66 promptly issued invoices for the correct amounts.

28. MPB has disputed its contractual obligation to pay the corrected invoices. The parties were unable to resolve this dispute under the informal resolution procedure set forth in the Contract or by mediation.

## COUNT ONE
## BREACH OF CONTRACT

29. Phillips 66 realleges all paragraphs above and incorporates them by reference as if fully set forth herein.

30. The Contract between Phillips 66 and MPB is a binding and enforceable contract.

31. MPB materially breached the Contract by refusing to pay in full for fuel it received from Phillips 66.

32. Phillips 66 performed all of its obligations under the Contract.

33. As a direct and proximate result of MPB's breach of contract, Phillips 66 has suffered and continues to suffer damages in an amount to be determined at trial that currently exceeds $4 million, accruing additional interest until fully paid.

## COUNT TWO
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

34. Phillips 66 realleges all paragraphs above and incorporates them by reference as if fully set forth herein.

8

35. Implied in all contracts governed by New York law is a covenant of good faith and fair dealing, which obligates the parties to act in good faith, to use their best efforts to deal fairly with one another, and to avoid impeding the other party from obtaining the benefits of the contract.

36. By failing to pay in full for the actual volume of fuel it accepted pursuant to the Contract, MPB breached the covenant of good faith and fair dealing and has wrongfully deprived, impaired, and injured Phillips 66's enjoyment of the rights, benefits and full value and fruits of the Contract, despite Phillips 66's performance of all its contractual obligations owed to MPB.

37. As a direct and proximate result of MPB's breach of the covenant of good faith and fair dealing, Phillips 66 has suffered damages in an amount to be determined at trial and that currently exceeds $4 million, accruing additional interest until fully paid.

## COUNT THREE
## UNJUST ENRICHMENT

38. Phillips 66 realleges all paragraphs above and incorporates them by reference as if fully set forth herein.

39. Pleading in the alternative, if MPB claims there was no contract with Phillips 66 as set forth above, MPB has been unjustly enriched at Phillips 66's expense as a result of its failure to pay the full amount for the fuel it received from Phillips 66.

40. It is against equity and good conscience to permit MPB to retain this amount.

## PRAYER

Phillips 66 respectfully requests that the Court enter judgment as follows:

a. That MPB materially breached its Contract with Phillips 66 by failing to timely pay 37 corrected invoices for fuel MPB received between August 2020 and April 2021;

b. That Phillips 66 is entitled to an award of damages arising out of MPB's material breach of the Contract in an amount satisfying the full balance of the corrected invoices, plus interest on unpaid amounts accrued as set forth in the Contract through the date of final judgment;

c. In the alternative, compensatory damages for unjust enrichment; and

d. Such other relief as this Court deems just and proper.

Dated February 9, 2022

Respectfully submitted,

BISSINGER, OSHMAN, WILLIAMS & STRASBURGER LLP

By: */s/ John Strasburger*
John Strasburger*
New York Bar No. 4434833
Texas Bar No. 19358335
*jstrasburger@bowslaw.com*
Jason Williams*
Texas Bar No. 24047113
*jwilliams@bowslaw.com*
Erin Bullard*
Texas Bar No. 24088844
*ebullard@bowslaw.com*
2229 San Felipe, Suite 1500
Houston, Texas 77019
Tel.: 713-524-8811
*Pro hac vice pending*

*Attorneys for Plaintiff*
*Phillips 66 Company*